## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SAUL SUBSIDIARY I LIMITED** | : |
| **PARTNERSHIP** | : |
| | : |
| **v.** | :   **Civil No. JKS 08-930** |
| | : |
| **BEST BUY STORES, L.P.** | : |
| | : |

### MEMORANDUM OPINION

On October 15, 2009, the court granted Plaintiff Saul Subsidiary Limited Partnership's (Saul) motions for summary judgment, ruling that Defendant Best Buy Stores, L.P. (Best Buy) had liability for the lease which was the subject of Saul's complaint and ruling in favor of Saul as to Best Buy's counterclaim.  Dkt. Nos. 67, 68.  Presently pending is Saul's motion for summary judgment as to damages, Dkt. No. 73, and Best Buy's cross motion for summary judgment as to damages.  Dkt. No. 74.  No hearing is necessary.

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The burden is on the moving party to demonstrate the absence of any genuine issue of material fact.  *Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).  A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting the burden of raising a genuine issue of fact by substantial evidence to the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A party who will have the burden of proof at trial, on the other hand, must make a showing sufficient to establish the existence of the essential elements of its claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  To defeat the motion, the party opposing summary judgment must submit evidentiary materials showing facts on the basis of which the finder of fact could reasonably decide the case in its favor.  *Anderson*, 477 U.S. at 252.  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Id.*

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).  *See also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed.1983)).  The court reviews each motion under the familiar standard for summary judgment, and must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A FEDERAL PRACTICE AND PROCEDURE § 2720.  Neither party contends that this case presents any disputed issues of material fact, and the court agrees and will thus render judgment.

The parties do not dispute the rental charges due under the lease, which after proper credits as discussed below total $1,707,949.63, and this amount will accordingly be awarded.

**A.  Interest.**

The Lease provides that "any sum accruing to Landlord under this Lease which is not paid when due, shall bear interest at the lesser of the rate of two percent (2%) per month, or the highest rate that Landlord may charge under Virginia usury laws."  Dkt. No, 73, Ex.1 at 16.  Saul claims entitlement to interest at the rate of 2% per month.  Best Buy contends that Virginia's public policy requires that prejudgment interest do no more than make the plaintiff whole, and that any contractual interest rate that exceeds the amount needed to make Saul whole is an unlawful penalty because it bears no relation to Saul's actual damages.

Saul replies that Best Buy is precluded from arguing the illegality of the interest rate because it is an affirmative defense which was waived when omitted from Best Buy's previous pleadings.  However, the defense of illegality, particularly when, as here, based on public policy, can nevertheless be considered in the court's discretion.  *See Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 305 (4th Cir. 2006); *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.,* 380 F.3d 200, 205 n. 3 (4th Cir. 2004); *United States v. Krieger*, 773 F. Supp. 580, 583-84 (S.D.N.Y. 1991).  The court will consider the issue here in the interest of finality and because no prejudice to Saul will occur.

Virginia law[1] "looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes, and 'courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.'"  *Shuttleworth, Ruloff and Giordano, P.C. v. Nutter*, 254 Va. 494, 498 (1997); quoting *Jessee v. Smith,* 222 Va. 15, 17-18 (1981); *see also W.R. Hall, Inc. v. Hampton Roads Sanitation Dist.,*

---

[1] Virginia substantive law applies in this diversity action.  *Limbach Co. LLC v. Zurich American Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) ("In an action based upon diversity of citizenship, the relevant state law controls."); *U.S. v. Dollar Rent A Car Systems, Inc.*, 712 F.2d 938, 940 (4th Cir. 1983) (citing cases in which courts have held that state law applies to prejudgment interest in diversity cases); *accord American Tel. & Tel. Co. v. United Computer Systems, Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996) ("In diversity actions, state law determines the rate of prejudgment interest . . . .").

273 Va. 350, 356 (2007).  A contract provision is not unconscionable unless it "reveal[s] an inequality so gross as to shock the conscience." *Mgmt. Enterprises, Inc. v. Thorncroft Co., Inc.,* 243 Va. 469, 473 (1992); *see also Envirotech Corp. v. Halco Eng'g., Inc.,* 234 Va. 583, 593 (1988).  ("[U]nconscionability deals primarily with a grossly unequal bargaining power at the time the contract is formed").  Moreover, absent public policy which is well defined, dominant, and readily ascertained from laws and legal precedents rather than mere suggested public interests, courts will not alter unambiguous contractual provisions on equitable grounds. *L. & E. Corp. v. Days Inns of Am., Inc.,* 992 F.2d. 55, 58-59 (4th Cir. 1993).

Best Buy cites no authority for the proposition that Virginia public policy is offended when two sophisticated business parties, who enjoy equal bargaining power, agree on an interest rate to be applied to late payments.  Rather, Best Buy cites Section 6.1-330.54 of the Virginia Code, which sets a judgment interest rate for actions in which the contract itself sets no rate. Saul cites Section 6.1-330.76, which provides that a business organization may not avail itself of statutes or case law relating to usury or compounding of interest to avoid interest which it has contracted to pay, and Section 6.1-330.75, which provides a similar preclusion on a commercial loan in excess of $5,000.  Taken together, these three provisions indicate a clear legislative intent to permit parties, particularly sophisticated businesses, to set their own interest rates as part of their overall bargain.  Here, both Saul and Best Buy were experienced commercial contractors who negotiated the terms of this lease on a form which Best Buy provided.  Dkt. No. 76 at Exs. 1, 2.  Each received the bargained-for consideration it sought, and the interest provision is no less valid than any other of the Lease's terms.

Saul seeks to have the interest compounded monthly.  Noting that the contract is silent on the matter, Best Buy contends that the interest should be simple or compounded annually.  Saul

does not address this issue in its reply.  The court is not inclined to find that the contract

implicitly provides that the interest be compounded monthly when Saul, as the beneficiary of

such a provision, could have ensured that it be expressly included if it had been intended.  *See*

*Landmark HHH, LLC v. Gi Hwa Park,* 277 Va. 50, 57 (2009).   Where a contract is silent as to

prejudgment interest, Section 8.01-382 of the Virginia Code gives the court discretion over its

award.  Given that this contract is silent on the compounding question, the court will order that

the interest be compounded annually.  *See Rush v. Hartford Mutual Ins. Co.,* 652 F. Supp. 1432,

1437, (W.D.Va. 1987).  Saul is entitled to annually compounded interest of 2% per month on

amounts due under the Lease through the date of this judgment, after which the standard federal

post-judgment interest rate shall apply.  28 U.S.C. § 1961(b); *Forest Sales Corp. v. Gedingfield,*

881 F.2d 111, 113 (4th Cir. 1989).

### B.   Attorney's fees.

It is undisputed that Section 32 of the Lease requires Best Buy to pay Saul's reasonable

attorney's fees upon default.  Saul claims entitlement to $267,172.73, Dkt. No. 75, supporting its

claim with affidavits, time records, and invoices which describe in detail the services performed

and the qualifications of those who performed them.  Dkt. No. 73, Exs. 16-18; Dkt. No. 75, Exs.

1, 2.  This evidence is sufficient to support a determination of reasonableness.  *See West Square,*

*L.L.C. v, Commc'n Technologies, Inc.*, 274 Va. 425, 433-34 (2007*).*

Best Buy does not dispute the validity or reasonableness of any particular amount that

Saul claims, but does contend that the total award should be reduced to account for what it calls

Saul's refusal to participate in serious settlement negotiations.  However, in light of Saul's

ultimate success, its rejection of Best Buy's suggestion of a mutual walk away and decision not

to request judicially sponsored mediation in a status report, Dkt. No. 74 at Exs. J and M, cannot

be deemed a refusal to participate in serious discussions.  Any negotiations which occurred under judicial supervision are confidential and cannot be considered.  28 U.S.C. § 651 (d); Local Rule 607.4.

Saul's unchallenged records and affidavits fully and adequately support its fee request, which is accordingly granted in full.

### C.  HVAC system repair and broker's fees.

Section 10 of the Lease required Best Buy to maintain the premises' HVAC system, and Section 16 requires Best Buy to pay Saul's reasonable costs to re-enter and re-let in the event of default.  After Best Buy defaulted, Saul spent $30,931.70 to repair the HVAC equipment and paid a real estate broker a prorated fee of $6,250, costs which Saul's evidence shows were incurred in order to procure a substitute tenant for the premises.  Dkt. No. 73, Exs. 2, 11, 13, 14, 15.

Best Buy contends that Saul cannot now claim the cost to repair the HVAC system because it did not demand that cost in its Complaint.  However, under Section 16 of the Lease, re-entry and re-letting costs are not a separate item of damage but rather are applied to reduce any credit to which Best Buy is entitled for rent received from a subsequent tenant.   If Saul can show that the HVAC repair cost falls within this provision, it will reduce Best Buy's credit without having been separately demanded.

Best Buy also contends that Saul has not shown why the HVAC repair was needed or that any damage to the system occurred during Best Buy's tenancy.  However, Saul presents unrebutted evidence that the premises could not be re-let without this repair.  Dkt. No. 73, Ex. 15.  Under the terms of the Lease, Saul is not required to make an additional showing that Best Buy caused the damage.  Where a landlord has an affirmative duty to mitigate damages, "it is

appropriate that costs reasonably incurred in readying the property and in re-letting or attempting

to re-let be added to the amount recoverable from the breaching tenant." *Reid v. Mutual of*

*Omaha Ins. Co.*, 776 P.2d 896, 907 (Utah 1989) (citing *Richard v. Broussard*, 495 So.2d 1291,

1293 (La. 1986) (affirming decision to award costs of redecoration and alteration pursuant to

contractual provision permitting landlord to deduct costs from new tenant's rental payments)).

The *Reid* court added that "[s]uch costs may include not only expenses incurred in seeking new

tenants, but also costs of repairs or alterations of the premises reasonably necessary to

successfully re-let them." *Id*. *See also E & S Investment Corp. v. Richland Bowl, Inc.*, 246 S.C.

582, 591 (1975) (allowing landlord to deduct from the new rent costs incurred in remodeling);

*Wanderer v. Plainfield Carton Corp.,* 40 Ill. App. 3d 552, 559-60 (1976).

       Best Buy denies responsibility for the broker's fee paid to obtain the substitute tenant

because it claims this cost would have been incurred if the Lease had terminated on its own

terms.  However, the plain language of Section 16 of the Lease provides that Saul may deduct

costs incurred in obtaining a substitute tenant.  Saul has reduced its broker fee claim to the

amount attributable to the period remaining on Best Buy's lease, a cost that Saul would not have

incurred had Best Buy not defaulted.  Accordingly, Saul is entitled to recover this cost.

### D.  Conclusion.

       In conclusion, Saul is entitled to judgment in the amount of $1,707,949.63 for all rental

charges after credits, with interest at the rate of 2% per month compounded annually through the

date of judgment, and $267,172.73 in costs and attorneys' fees.   Saul is requested to submit a

proposed judgment showing the corrected interest amount.

Date:   February 22, 2010                  /S/

                                        JILLYN K. SCHULZE
                             United States Magistrate Judge